MARISSA R. TEMPLE
Nevada Bar No. 9028
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 South Third Street
Las Vegas, Nevada 89101
Phone (702) 383-3400
Fax (702) 384-1460
Email: mtemple@rmcmlaw.com
Attorney for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| CAROLE MENDOZA, an individual; | ) | CASE NO.: |
| Plaintiff, | ) | |
| vs. | ) | |
| ACUITY, A MUTUAL INSURANCE COMPANY, a foreign corporation; DOES I through X, and ROE CORPORATIONS I through X, inclusive; | ) | |
| Defendants. | ) | |

## **DEFENDANT'S NOTICE OF REMOVAL**

Defendant, ACUITY, A MUTUAL INSURANCE COMPANY, (hereinafter referred to as "Defendant"), by and through its counsel, Marissa R. Temple, Esq., of the law firm of Rogers, Mastrangelo, Carvalho & Mitchell, hereby provides Notice that they are removing this action from the Eighth Judicial District Court, Clark County Nevada, to the United States District Court for the District of Nevada.  In support thereof they state as follows:

1.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 USC §1332 in that there is complete diversity among the parties and more than $75,000 in controversy, exclusive of interest and costs.  Specific facts supporting such jurisdiction are set forth below.

2.      Plaintiff is, upon information and belief, a citizen of the State of Nevada and is

1    domiciled therein. *See* Complaint attached hereto as Exhibit "A" at p. 1, lines 21-23(". . .Plaintiff is

2    and was a resident of the County of Clark, State of Nevada).

3         3.    Plaintiff has filed suit against Defendant in the Eighth Judicial District Court, Clark

4    County Nevada, Case No. A-20-814057-C assigned to Dept. XXIII (the "State court action"). The

5    causes of action brought by Plaintiff are breach of contract and breach of the covenant of good faith

6    and fair dealing. As such, the State court action is not a "direct action" against an insurer. *Beckham*

7    *v. Safeco Ins. Co. of America*, 691 F.2d 898 (9th Cir. 1982); *Weast v. Travelers Cas. And Sur. Co*, 7

8    F. Supp.2d 1129 (D. Nev. 1998). *See* Exhibit "A."

9         4.    Defendant Acuity is the defendant in the State court action. Acuity is a mutual

10   insurance company organized under Wisconsin law and domiciled in Wisconsin. *See* Information for

11   an Insurance Entity obtained from the State of Wisconsin Division of Insurance and National

12   Association of Insurance Commissioners, attached hereto as Exhibit "B." Defendant's principal place

13   of business is in Sheboygan, Wisconsin. *Id.* Per 28 USC §1332(c)(1), a corporation is "deemed to be

14   a citizen of every State and foreign state by which it has been incorporated and of the State or foreign

15   state where it has its principal place of business . . ." As the State court action is not a "direct action"

16   against an insurer, Defendant cannot been deemed to be a citizen of any other State or foreign state.

17   *See* 28 USC §1332(c)(1)(A).

18        5.    The Complaint in the State court action was filed on April 23, 2020 and purportedly

19   served on Defendant by serving Acuity at its principal place of business in Sheboygan, Wisconsin on

20   April 29, 2020. *See* Proof of Service, attached hereto as Exhibit "C." Such was Defendant's first

21   receipt of a copy of the Complaint. The date upon which Defendant files its Notice of Removal, May

22   11, 2020, is within the 30 day deadline for filing a notice of removal set forth in 28 USC §1446(b)(1).

23   Therefore, Defendant's Notice of Removal is timely-filed.

24        6.    There is complete diversity between Plaintiff and Defendant and said diversity of

25   citizenship exited at the time that the State court action was filed and continues to exist, as Defendant

26   is not a citizen of the State of Nevada, the State in which the State court action was brought. 28 USC

27   §1441(b)(2) and the State of Plaintiff's citizenship.

28        7.    The amount in controversy in the State court action exceeds $75,000. In his Complaint

Plaintiff prays for damages "in excess of $15,000" in both general and special damages, plus attorney's fees and costs, interest, punitive damages and other relief. *See* Exhibit "A," at p. 6. Pursuant to 28 USC §1446(c)(2)(A)(ii) and 28 USC §1446(c)(2)(B) provide for removal based on diversity jurisdiction when, as in Nevada, "the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demand" so long as ". . . the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)": to wit: $75,000.

8.      The evidence that Plaintiff's claim exceeds $75,000 can be found in the Complaint. In the body of the Complaint, Plaintiff asserts that he has been damaged by Defendant's "refusing to properly compensate Plaintiff for the injuries she sustained in the subject accident." *See* Exhibit "A" at p. 6.

9.      The Declaration's page for the applicable policy is attached hereto as Exhibit "D." The limits of the uninsured/underinsured motorist coverage is $1,000,000." *Id*. Plaintiff's most recent demand seeks $300,000 as a "fair and reasonable settlement" of this matter. *See Correspondence from Counsel dated March 10. 2020,* attached hereto as Exhibit "E". Therefore, a preponderance of the evidence indicates that the value of Plaintiff's claim exceeds $75,000.

10.      A true and correct copy of file-stamped Defendant's Notice of Removal will be filed with the Eighth Judicial District Court, Clark County, Nevada.

Based on the foregoing, Defendant hereby removes the State court action to this Court.

DATED this 12th day of May, 2020.

ROGERS, MASTRANGELO, CARVALHO & MITCHELL

/s/ Marissa R. Temple

_____
MARISSA R. TEMPLE
Nevada Bar No. 9028
700 South Third Street
Las Vegas, Nevada 89101
Attorney for Defendant

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to N.R.C.P. 5(a), E.D.C.R. 7.26(a), and Rule 9 of the N.E.F.C.R., I hereby certify that I am an employee of Rogers, Mastrangelo, Carvalho & Mitchell, and on the 12th day of May, 2020, a true and correct copy of the foregoing **<u>DEFENDANT'S NOTICE OF REMOVAL</u>** was served the Court's electronic filing and service system pursuant to Rule 9 of the N.E.F.C.R. upon the following counsel of record:

Peter A. Mazzeo, Esq.
MAZZEO LAW, LLC
631 South 10th Street
Las Vegas, Nevada 89101
Telephone: (702) 382-3636
Facsimile: (702) 382-5400
E-Mail: pmazzeo@mazzeolaw.com
*Attorneys for Plaintiff*

/s/ Rusti Anthony
_____
An Employee of
Rogers, Mastrangelo, Carvalho & Mitchell

# EXHIBIT "A"

# EXHIBIT "A"

Electronically Filed
4/23/2020 3:29 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
PETER A. MAZZEO, ESQ.
Nevada Bar No. 9387
MAZZEO LAW, LLC
631 South 10th Street
Las Vegas, Nevada 89101
P: 702.382.3636
F: 702.382.5400
E: pmazzeo@mazzeolaw.com
*Attorneys for Plaintiff*

CASE NO: A-20-814057-C
Department 23

## DISTRICT COURT OF THE STATE OF NEVADA

## CLARK COUNTY

\* \* \* \* \*

CAROLE MENDOZA, an individual;

    Plaintiff,

vs.

ACUITY, A MUTUAL INSURANCE
COMPANY, a foreign corporation; DOES I
through X, and ROE CORPORATIONS I
through X, inclusive;

    Defendants.

Case No.:

Dept. No.:

**COMPLAINT**

COMES NOW, Plaintiff CAROLE MENDOZA by and through her attorneys, PETER MAZZEO, ESQ., of Mazzeo Law, LLC, as and for her causes of action against ACUITY, A MUTUAL INSURANCE COMPANY, a foreign corporation, and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    At all times relevant hereto, Plaintiff CAROLE MENDOZA is and was a resident of the County of Clark, State of Nevada.

2.    Plaintiff is informed, believes, and thereupon alleges that, at all times relevant hereto and at all times mentioned herein, Defendant ACUITY, A MUTUAL INSURANCE COMPANY, [hereinafter "ACUITY or ACUITY INSURANCE COMPANY"], is and was a foreign corporation doing business in the County of Clark, State of Nevada.

3.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does I through X and Roe Corporations I through X, including without

MAZZEO LAW, LLC

1   limitation, any employer, franchisor, or owner d/b/a thereof, not currently known and therefore
2   not yet named herein, are unknown to Plaintiff, who therefore sue said Defendants by such
3   fictitious names.  Plaintiff is informed and believes, and therefore alleges, that each of the
4   Defendants designated as Doe Defendants or Roe Corporations is responsible in some manner
5   for the events and occurrences referred to in this Complaint, and/or owes money to Plaintiff
6   and/or may be affiliated with ACUITY INSURANCE COMPANY, and Plaintiff will ask leave
7   of the Court to amend this Complaint and insert the true names and capacities of Doe Defendants
8   I through X and Roe Corporation I through X when the same have been ascertained and to join
9   said Defendants in this action.

10       4.      The underlying collision that is the subject of this lawsuit occurred in Clark
11   County, Nevada, and the subject insurance policy was issued by Defendant ACUITY
12   INSURANCE COMPANY in Nevada to its insured ALLSTATE ELECTRIC LLC.

13                              **GENERAL ALLEGATIONS**

14       5.      Plaintiff realleges and repleads each and every allegation of the preceding
15   paragraphs as though fully set forth hereunder.

16       6.      On or about April 7, 2018, Bradley Bremers was driving his 2018 Chevy
17   Silverado Pickup with Carole Mendoza as a front seat passenger on northbound Rainbow just
18   north of Craig Road in Las Vegas Nevada.  Adverse driver, Caleb Schulz driving a Dodge Ram
19   Pickup slammed into the rear of Mendoza's vehicle.  As a direct and proximate result of that
20   collision, Plaintiff was injured.

21       7.      Liability was established against Caleb Schulz, who was insured by USAA
22   Insurance Company and the bodily injury claim settled for the $50,000 policy limits.

23       8.      Plaintiff CAROLE MENDOZA was a passenger in the subject vehicle driven by
24   Bradley Bremers which was registered and owned by Allstate Electric LLC which was insured
25   by ACUITY INSURANCE COMPANY.  Bradley Bremers was a permissive user of the vehicle
26   owned by and registered to Allstate Electric LLC.

27       9.      As a direct and proximate result of the collision set forth above and the negligence
28   of Caleb Schulz, Plaintiff suffered bodily injury and resulting pain and suffering, disability,
     disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of

MAZZEO LAW, LLC

MAZZEO LAW, LLC

1   hospitalization, medical and nursing care and treatment.  The losses are permanent and
2   continuing in nature, and the Plaintiff will suffer the losses in the future.

3          10.    At the time of the foregoing collision, Defendant ACUITY INSURANCE
4   COMPANY issued in exchange for valuable consideration a policy of automobile insurance to
5   Allstate Electric LLC, which provided insurance benefits to Plaintiff, as a passenger of the
6   subject vehicle, including underinsured motorist (UIM) coverage. Said policy was in full force
7   and effect at all material and relevant times herein.

8          11.    Following this collision referred to above, Plaintiff made a claim under the
9   Underinsured Motorist (UIM) coverage policy provision with ACUITY INSURANCE
10  COMPANY.

11         12.    Plaintiff has complied with all terms and conditions precedent to entitlement to
12  uninsured motorist benefits under the UIM policy with ACUITY INSURANCE COMPANY.

13         13.    Defendant refused to make adequate payment to Plaintiff as was required under
14  the UIM policy.

15         14.    Defendant's refusal to make adequate payment to Plaintiff was made without
16  reasonable basis in fact or law.

17         15.    Defendant's refusal to make adequate payment to Plaintiff was made in bad faith
18  and for the purpose of denying the benefits of contract for underinsured motorist coverage to
19  Plaintiff.

20         16.    As a direct and proximate result of ACUITY INSURANCE COMPANY's breach
21  of its duties that it owed to Plaintiff, Plaintiff has been deprived of the benefits to which she was
22  entitled and which were bargained for in the insurance contract and she was forced to incur
23  expenses to obtain the benefits to which she was otherwise entitled and Plaintiff has otherwise
24  been damaged in amounts to be determined at trial.

25         17.    It has been necessary for Plaintiff to retain the services of an attorney to prosecute
26  this action, and Plaintiff is entitled to reasonable attorney's fees and costs incurred.

27  ///
28  ///
    ///

-3-
COMPLAINT

**MAZZEO LAW, LLC**

### FIRST CAUSE OF ACTION

### (Breach of Contract)

18.     Plaintiff realleges and repleads each and every allegation of the preceding paragraphs as though fully set forth hereunder.

19.     There is a valid and existing insurance agreement between Allstate Electric LLC and Defendant which was extended to the Plaintiff by nature of the Plaintiff MENDOZA being a passenger in Mr. Bremer's vehicle.

20.     Plaintiff performed or was excused from performance under the agreement.

21.     Plaintiff sustained damages in excess of the adverse driver's bodily injury policy limits thereby triggering coverage and benefits under the UIM policy provision.

22.     Defendant breached the agreement by, amongst other things, refusing to properly compensate Plaintiff for her total damages in direct violation of the terms of the agreement.

23.     As a direct and proximate result of Defendant's breach of contract, Plaintiff has incurred damages in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

24.     It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is entitled to reasonable attorney's fees and costs incurred.

### SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

25.     Plaintiff realleges and repleads each and every allegation of the preceding paragraphs as though fully set forth hereunder.

26.     Implied in every contract is a covenant of good faith and fair dealing.

27.     Allstate Electric LLC and Defendant entered into a valid and existing insurance agreement.

28.     As a result of Plaintiff CAROLE MENDOZA being a passenger in Allstate Electric LLC's vehicle, Defendant owed Plaintiff a duty of good faith and fair dealing.

29.     Defendant ACUITY INSURANCE COMPANY owed Plaintiff the following duties, amongst others:

      a.     a duty to conduct a prompt, reasonable and diligent investigation of the facts of the case to determine the validity of the claims made by Plaintiff against Defendant ACUITY INSURANCE COMPANY;

MAZZEO LAW, LLC

1    b.    a duty to adopt and implement reasonable standards for the prompt

2          investigation and processing of claims arising under its insurance policy;

3    c.    a duty to evaluate the Plaintiff's claim fairly;

4    d.    a duty to attempt in good faith to effectuate a prompt, fair and equitable

5          settlement of a claim where liability is reasonably clear;

6    e.    a duty to act promptly and reasonably in settling the claim;

7    f.    a duty to not reject a reasonable and fair offer of settlement;

8    g.    a duty to not put its insured through unnecessary litigation;

9    h.    a duty to refrain from actions that would injure the Plaintiff's ability to obtain

10         the benefits of the insurance contract; and

11   i.    a duty of good faith and fair dealing.

12   30.   Upon information and belief, Defendant ACUITY INSURANCE COMPANY

13   breached its duties owed to Plaintiff by, among other things:

14   a.    failing to conduct a prompt, reasonable and diligent investigation of the

15         claims made against ACUITY INSURANCE COMPANY;

16   b.    failing to adopt and implement reasonable standards for the prompt

17         investigation and processing of claims arising under its insurance policy;

18   c.    failing to evaluate the claim fairly;

19   d.    failing to attempt in good faith to effectuate a prompt fair and equitable

20         settlement of the claim in which liability of the insurer has become

21         reasonably clear;

22   e.    compelling insureds to institute litigation to recover amounts due under

23         an insurance policy by offering substantially less than the amounts

24         ultimately recovered;

25   f.    failing to make any reasonable settlement offers to settle the claims;

26   g.    failing to accept reasonable and fair offers of settlement;

27   h.    putting its insured, Plaintiff herein, through unnecessary litigation; and

28   i.    failing to pay any reasonable portion of the insurance coverage to

           Plaintiff.

31.    Defendant breached its duty of good faith and fair dealing by, amongst other things, refusing to properly compensate Plaintiff for the injuries she sustained in the subject accident.

32.    As a direct and proximate result of Defendant's breach of the covenant of good faith and fair dealing, Plaintiff has incurred damages in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

33.    It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action, and Plaintiff is entitled to reasonable attorney's fees and costs incurred.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    For general and compensatory damages;

2.    For special damages in an amount to be determined at time of trial;

3.    For costs of suit and pre and post-judgment interest;

4.    For attorneys' fees; and

5.    For such other and further relief as the court deems just, equitable and proper.

DATED this 23rd day of April, 2020.

MAZZEO LAW, LLC

PETER A. MAZZEO, ESQ.
Nevada Bar No. 9387
631 South 10th Street
Las Vegas, Nevada 89101
*Attorneys for Plaintiff*

-6-
COMPLAINT

# EXHIBIT "B"

# EXHIBIT "B"

Jurisdiction: Wisconsin

## Demographics

**Company Name:** ACUITY, A Mutual Insurance Company
**SBS Company Number:** 54218663
**Domicile Type:** Domestic
**NAIC Group Number:**
**Merger Flag:** No

**NAIC CoCode:** 14184
**State of Domicile:** Wisconsin
**Organization Type:** Mutual

**Short Name:**
**FEIN:** 39-0491540
**Country of Domicile:** United States
**Date of Incorporation:** 09/01/1925

## Address

**Business Address**
2800 S TAYLOR DR
SHEBOYGAN, WI 53081-8470
United States

**Mailing Address**
PO BOX 58
SHEBOYGAN, WI 53082-0058
United States

**Statutory Home Office Address**
2800 S TAYLOR DR
SHEBOYGAN, WI 53081-8470
United States

**Main Administrative Office Address**
2800 S TAYLOR DR
SHEBOYGAN, WI 53081-8470
United States

## Phone, Email, Website

**Phone**

| Type | Number |
| --- | --- |
| Business Primary Phone | (920) 458-9131 |
| Fax Phone | (920) 458-1618 |
| Toll Free Phone | (800) 242-7666 |

**Email**
No results found.

**Website**
No results found.

## Company Type

**Company Type:** Property and Casualty
**Status:** Active
**Effective Date:** 06/04/2001
**Issue Date:** 10/19/1925
**Articles of Incorporation Received:** No

**Status Reason:**
**Legacy State ID:** 110739
**Approval Date:**
**Article No:**

**Status Date:** 10/19/1925
**Expiration Date:**
**File Date:**
**COA Number:**

## Appointments

Show 10 ▼ entries          Showing 1 to 10 of 8715 entries          🔍 Filter

| Licensee Name | License Number | NPN | License Type | Line of Authority | Appointment Date | Effective Date | Expiration Date |
| --- | --- | --- | --- | --- | --- | --- | --- |
| SUSAN CARR | 2129264 | 2129264 | Intermediary (Agent) Individual | Personal Lines P&C | 01/31/2017 | 01/15/2020 | 03/15/2021 |
| JESSICA METERAUD | 8166941 | 8166941 | Intermediary (Agent) Individual | Property | 11/05/2019 | 01/15/2020 | 03/15/2021 |
| JESSICA METERAUD | 8166941 | 8166941 | Intermediary (Agent) Individual | Casualty | 11/05/2019 | 01/15/2020 | 03/15/2021 |
| NICHOLE CAPUZZI | 8180794 | 8180794 | Intermediary (Agent) Individual | Casualty | 11/21/2014 | 01/15/2020 | 03/15/2021 |
| NICHOLE CAPUZZI | 8180794 | 8180794 | Intermediary (Agent) Individual | Property | 11/21/2014 | 01/15/2020 | 03/15/2021 |
| PATRICIA WEBER | 8198989 | 8198989 | Intermediary (Agent) Individual | Casualty | 06/07/2006 | 01/15/2020 | 03/15/2021 |
| PATRICIA WEBER | 8198989 | 8198989 | Intermediary (Agent) Individual | Property | 06/07/2006 | 01/15/2020 | 03/15/2021 |
| KATHLEEN HORVATH | 8297186 | 8297186 | Intermediary (Agent) Individual | Casualty | 12/01/2004 | 01/15/2020 | 03/15/2021 |
| KATHLEEN HORVATH | 8297186 | 8297186 | Intermediary (Agent) Individual | Property | 12/01/2004 | 01/15/2020 | 03/15/2021 |
| LESLIE CZAIKOWSKI | 8297197 | 8297197 | Intermediary (Agent) Individual | Casualty | 01/11/2005 | 01/15/2020 | 03/15/2021 |

 First   Previous   [1]   2   3   Next   Last

## Line Of Business

| Line of Business | Citation Type | Effective Date |
| --- | --- | --- |
| Aircraft | Aircraft | 10/19/1925 |
| Automobile | Automobile | 10/19/1925 |
| Disability Insurance | Disability Insurance | 10/19/1925 |
| Fidelity Insurance | Fidelity Insurance | 10/19/1925 |
| Fire, Inland Marine and Other Property Insurance | Fire, Inland Marine and Other Property Insurance | 10/19/1925 |
| Liability and Incidental Medical Expense Insurance (other than automobile) | Liability and Incidental Medical Expense Insurance (other than automobile) | 10/19/1925 |
| Miscellaneous | Miscellaneous | 10/19/1925 |
| Ocean Marine Insurance | Ocean Marine Insurance | 10/19/1925 |
| Surety Insurance | Surety Insurance | 10/19/1925 |
| Workers Compensation Insurance | Workers Compensation Insurance | 10/19/1925 |

## Contact

| Contact Type | Preferred Name | Name | E-mail | Phone | Address |
| --- | --- | --- | --- | --- | --- |
| Registered Agent for Service of Process | | JAMES LOIACONO | | | Other |

ACUITY A MUTUAL INSURANCE COMPANY
2800 S TAYLOR DR
SHEBOYGAN, WI
United States County
530818470

## Company Merger

© 2019 National Association of Insurance Commissioners. All rights reserved.

Company Lookup Summary

## Name Change History

| Previous Name | New Name | Effective Date |
|---|---|---|
| | Heritage Mutual Insurance Company | 10/19/1925 |
| Heritage Mutual Insurance Company | ACUITY, A Mutual Insurance Company | 06/01/2001 |

© 2019 National Association of Insurance Commissioners. All rights reserved.

EXHIBIT "C"

EXHIBIT "C"

### AFFIDAVIT OF SERVICE

Electronically Filed
5/7/2020 3:38 PM
Steven D. Grierson
CLERK OF THE COURT

State of Nevada                                    County of Clark

Case Number: A-20-814057-C

Plaintiff:
**Carole Mendoza**

vs.

Defendant:
**Acuity, A Mutual Insurance Company**

For:
Peter Mazzeo
Mazzeo Law, LLC
631 South 10th Street
Las Vegas, NV 89101

Received by East Central Wisconsin Process to be served on **Acuity, A Mutual Insurance Company, 2800 South Taylor Drive, Sheboygan, WI 53081.**

I, Shawn Lamb, being duly sworn, depose and say that on the **29th day of April, 2020 at 4:35 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Summons and Complaint** with the date and hour of service endorsed thereon by me, to: **Kao Xiong as Receptionist for Acuity, A Mutual Insurance Company,** at the address of: **2800 South Taylor Drive, Sheboygan, WI 53081**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
4/29/2020  11:07 am  Ms. Xiong is authorized to accept service on behalf of Acuity, A Mutual Insurance Company.

I certify that I am not a party to the action, that I am an adult resident of the State of Wisconsin, that I am of legal age and have proper authority in the jurisdiction in which this service was completed.

Subscribed and Sworn to before me on the _____ day
of _____, _____ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC
My Commission Expires: _____

**Shawn Lamb**
Process Server

**East Central Wisconsin Process**
P.O. Box 1211
Sheboygan, WI 53083
**(920) 458-2109**

Our Job Serial Number: EWP-2020000290
Service Fee: $45.00

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1m

Case Number: A-20-814057-C

Electronically Issued
4/27/2020 3:38 PM

1  | **SUMM**
2  | PETER A. MAZZEO, ESQ.
   | Nevada Bar No. 9387
3  | MAZZEO LAW, LLC
   | 631 South 10ᵗʰ Street
4  | Las Vegas, Nevada 89101
   | P: 702.382.3636
5  | F: 702.382.5400
   | E: pmazzeo@mazzeolaw.com
6  | *Attorneys for Plaintiff*

Process Server Shawn Lamb
Date: 4/29/20 Time: 435 am/pm
( ) Personal        ( ) Substitute
( ) Posted          (X) Corporate

7  | **DISTRICT COURT OF THE STATE OF NEVADA**

8  | **CLARK COUNTY**

9  | * * * * *

10 | CAROLE MENDOZA, an individual;        ) Case No.:  A-20-814057-C
11 |                                        ) Dept. No.:  23
   |        Plaintiff,                      )
12 |                                        )
   |        vs.                             )
13 |                                        )
   | ACUITY, A MUTUAL INSURANCE             )
14 | COMPANY, a foreign corporation; DOES I )
   | through X, and ROE CORPORATIONS I      )
15 | through X, inclusive;                  )
   |                                        )
16 |        Defendants.                     )
   | _____   )

17 | **SUMMONS**

18 | **NOTICE!  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU**

19 | **WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 21 DAYS.**

20 | **READ THE INFORMATION BELOW.**

21 | **ACUITY, A MUTUAL INSURANCE COMPANY**

22 |

23 | **TO THE DEFENDANT:**  A civil Complaint has been filed by the Plaintiff(s) against you for

24 | the relief set forth in its Complaint.

25 |        If you intend to defend this lawsuit, within 21 days after this Summons is served on you

26 | exclusive of the day of service, you must do the following:

27 |        File with the Clerk of this Court, whose address is shown below, a formal written

28 | response to the Complaint in accordance with the rules of the Court.

*MAZZEO LAW, LLC*

1    Serve a copy of your response upon the attorney whose name and address is shown

2  below.

3    Unless you respond, your default will be entered upon application of the Plaintiff(s) and

4  this Court may enter a judgment against you for the relief demanded in the Complaint, which

5  could result in the taking of money or property or other relief requested in the Complaint.

6    If you intend to seek the advice of an attorney in this matter, you should do so promptly

7  so that your response may be filed in time.

8

9  **Submitted by:**

10  MAZZEO LAW, LLC

11

12  /s/ Peter Mazzeo

Peter A. Mazzeo, Esq.

13  Nevada Bar No. 9387

631 South 10th Street

14  Las Vegas, Nevada  89101

*Attorneys for Plaintiff Carole Mendoza*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STEVEN D. GRiERSON

CLERK OF THE COURT

*Robyn Rodriguez*   4/28/2020

Deputy Clerk

Eighth Judicial District Court

Regional Justice Center

200 Lewis Avenue

Las Vegas, Nevada 89155

Robyn Rodriguez

MAZZEO LAW, LLC

# EXHIBIT "D"

# EXHIBIT "D"



**ACUITY**
*A Mutual Insurance Company*

**COMMERCIAL AUTO
COVERAGE PART**

## Business Auto  Amended Declarations

Item One
First Named Insured and Address:

ALLSTATE ELECTRIC LLC
4535 W RUSSELL RD STE 6
LAS VEGAS NV 89118

Agency Name and Number:

SUNDANCE INSURANCE LLC
8264-AA

Policy Number:   Z46031

Policy Period:

| | |
|---|---|
| Effective Date: | 05-23-17 |
| Expiration Date: | 05-23-18 |

In return for the payment of the premium and subject to all the terms of the policy, we agree to provide the insurance coverage as stated in the same.

12:01 A.M. standard time at your mailing address shown in the declarations

### NOTICE

Any contrasting type contained in this policy is in compliance with the Nevada statutory requirements that anti-stacking provisions be prominently displayed in the policy, binder, or endorsement.

Item Two
### SCHEDULE OF COVERAGES AND COVERED AUTOS

Each of these coverages apply only to those *autos* shown as covered *autos* by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Auto Symbols | Limit of Insurance | Premium |
|---|---|---|---|
| Liability | 7,8,9,19 | $   1,000,000  each *accident* | $  ███████ |
| Auto Medical Payments | 2 | 1,000  each person | ███████ |
| Uninsured Motorists Bodily Injury | 2,8,9 | 1,000,000  each person       1,000,000  each *accident* | |
| Comprehensive | 2,8 | Actual cash value, cost of repair or stated amount (if any), whichever is less, minus the deductible shown in Item Three for each covered *auto*. | ███████ |
| Collision | 2,8 | Actual cash value, cost of repair or stated amount (if any), whichever is less, minus the deductible shown in Item Three for each covered *auto*. | ███████ |

**Estimated Schedule Premium** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ ███████

### PREMIUM SUMMARY

Estimated Schedule Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ ███████

Estimated Endorsement Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ███████

**Estimated Advance Premium** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ ███████

### COVERAGE FORMS AND ENDORSEMENTS APPLICABLE TO BUSINESS AUTO COVERAGE

Page 2

Policy Number:        Z46031
Effective Date:       05-23-17

| Form Number | Form Title | Premium |
|---|---|---|
| IL-0017F (11-98) | Common Policy Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ | |
| IL-0021F (03-14) | Nuclear Energy Liability Exclusion - Broad Form . . . . . . . . . . . . . . . . . . . . | |
| IL-7012 (03-14) | Asbestos Exclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-7214 (10-98) | Add'l Insd - Auto Status When Required in a Written Agreement With You - Primary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-9903F (03-06) | Auto Medical Payments Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-0001F (10-14) | Business Auto Coverage Form  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-2384F (10-13) | Exclusion of Terrorism . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-7247 (10-16) | ACUITY Enhancements - Business Auto . . . . . . . . . . . . . . . . . . . . . . . . . | ████ |
| CA-0136R (10-14) | Nevada Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-2127F (10-13) | Nevada Uninsured Motorists Coverage . . . . . . . . . . . . . . . . . . . . . . . . . | ████ |
| CA-3101F (10-13) | Nevada Split Uninsured Motorists Coverage Limits . . . . . . . . . . . . . . . . . | |
| IL-0110F (09-07) | Nevada Changes - Concealment, Misrepresentation or Fraud  . . . . . . . . . | |
| IL-0115R (01-10) | Nevada Changes - Domestic Partnership  . . . . . . . . . . . . . . . . . . . . . . . . | |
| IL-0251F (09-07) | Nevada Changes - Cancellation and Nonrenewal . . . . . . . . . . . . . . . . . . | |

**Estimated Endorsement Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$** ████

Item Three
## SCHEDULE OF COVERAGES

| | Unit No. | Model Year | Vehicle Description | Vehicle ID Number | PGS Comp | PGS Coll | Terr | Class Code |
|---|---|---|---|---|---|---|---|---|
| * | 001 | 04 | FORD F550 SUPER DUTY | 1FDAF56P44EC20296 | 010 | 010 | 109 | 21483 |
| * | 002 | 04 | FORD ECONOLINE E250 VAN | 1FTNE24L24HB11549 | 007 | 007 | 109 | 01483 |
| * | 003 | 02 | GMC SAVANA G1500 | 1GTEG15W021208462 | 007 | 007 | 109 | 01483 |
| * | 004 | 07 | FORD ECONOLINE E250 VAN | 1FTNS24L07DA78359 | 008 | 008 | 109 | 01483 |
| * | 005 | 00 | CHEVROLET GMT-400 C3500 | 1GBJC34J0YF501435 | 007 | 007 | 109 | 01483 |
| * | 006 | 99 | FORD ECONOLINE E350 SUPER DUTY | 1FTSE34L4XHA02491 | 007 | 007 | 109 | 01483 |
| * | 007 | 00 | CHEVROLET EXPRESS G3500 | 1GCHG35F1Y1179751 | 007 | 007 | 109 | 01483 |
| * | 008 | 00 | GMC SONOMA | 1GTCS1956Y8219070 | 005 | 005 | 109 | 01483 |
| * | 009 | | HIRED AUTOS ($ 0  estimated cost of hire, as defined below)[2] | | | | 109 | 500001 |
| * | 010 | | NONOWNED AUTOS (3 Employees) | | | | 109 | 600001 |
| * | 011 | 08 | TOYOTA PRIUS | JTDKB20U783389151 | 014 | 014 | 033 | A10801 |
| * | 012 | 12 | MIRAGE TRAILER | 5M3BE1428C1049991 | 005 | 005 | 109 | 68483 |
| * | 013 | 10 | INTERSTATE WEST CORPORATION TR | 4RACS121XAK034078 | 002 | 002 | 109 | 68483 |
| * | 014 | 94 | FORD F250 | 1FTHX26H5RKA40602 | 007 | 007 | 109 | 01483 |
| * | 015 | 16 | FORD TRANSIT T-250 | 1FTYR2ZM0GKA78531 | 008 | 008 | 109 | 01483 |

Page 3
Policy Number:      Z46031
Effective Date:      05-23-17

| Unit No. | Liability Limit | Liability BI Premium | Liability PD Premium | PD Deductible | Medical Payments Limit | Premium |
|---|---|---|---|---|---|---|
| 001 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 002 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 003 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 004 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 005 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 006 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 007 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 008 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 009 | 1,000,000 | [redacted] | Included | | | |
| 010 | 1,000,000 | [redacted] | Included | | | |
| 011 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 012 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 013 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 014 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |
| 015 | 1,000,000 | [redacted] | Included | | 1,000 | [redacted] |

| Unit No. | Comprehensive Stated Amount | Comprehensive Deductible Amount | Comprehensive Premium Amount | Specified Causes of Loss Stated Amount | Specified Causes of Loss Deductible Amount | Specified Causes of Loss Premium Amount | Full Glass |
|---|---|---|---|---|---|---|---|
| 001 | | 1,000 | [redacted] | | | | |
| 002 | | 1,000 | [redacted] | | | | |
| 003 | | 1,000 | [redacted] | | | | |
| 004 | | 1,000 | [redacted] | | | | |
| 005 | | 1,000 | [redacted] | | | | |
| 006 | | 1,000 | [redacted] | | | | |
| 007 | | 1,000 | [redacted] | | | | |
| 008 | | 1,000 | [redacted] | | | | |
| 009 | | 1,000 | [redacted] | | | | |
| 010 | | | | | | | |
| 011 | | 1,000 | [redacted] | | | | |
| 012 | | 1,000 | [redacted] | | | | |
| 013 | | 1,000 | [redacted] | | | | |
| 014 | | 1,000 | [redacted] | | | | |
| 015 | | 1,000 | [redacted] | | | | |

| Unit No. | Collision Stated Amount | Collision Deductible Amount | Collision Premium Amount | Towing Limit | Towing Premium | APC Discount | Safety Discount |
|---|---|---|---|---|---|---|---|
| 001 | | 1,000 | [redacted] | | | | |
| 002 | | 1,000 | [redacted] | | | | |

SO 01 05/05/17

Policy Number:    Z46031
Effective Date:    05-23-17

| Unit No. | Stated Amount | Collision Deductible Amount | Premium Amount | Towing Limit | Premium | APC Discount | Safety Discount |
|---|---|---|---|---|---|---|---|
| 003 | | 1,000 | ███████ | | | | |
| 004 | | 1,000 | ███████ | | | | |
| 005 | | 1,000 | ███████ | | | | |
| 006 | | 1,000 | ███████ | | | | |
| 007 | | 1,000 | ███████ | | | | |
| 008 | | 1,000 | ███████ | | | | |
| 009 | | 1,000 | ███████ | | | | |
| 010 | | | | | | | |
| 011 | | 1,000 | ███████ | | | | |
| 012 | | 1,000 | ███████ | | | | |
| 013 | | 1,000 | ███████ | | | | |
| 014 | | 1,000 | ███████ | | | | |
| 015 | | 1,000 | ███████ | | | | |

| Unit No. | Fleet No. | Premium Per Unit Number |
|---|---|---|
| 001 | | ███████ |
| 002 | | ███████ |
| 003 | | ███████ |
| 004 | | ███████ |
| 005 | | ███████ |
| 006 | | ███████ |
| 007 | | ███████ |
| 008 | | ███████ |
| 009 | | ███████ |
| 010 | | ███████ |
| 011 | | ███████ |
| 012 | | ███████ |
| 013 | | ███████ |
| 014 | | ███████ |
| 015 | | ███████ |

**Estimated Schedule Premium** ................ **$** ███████

\* Marks the schedule number item affected by the change.

[2] Cost of hire means the total amount you incur for the hire of *autos* you do not own (not including *autos* you borrow or rent from your partners or *employees* or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

# EXHIBIT "E"

# EXHIBIT "E"

Case 2:20-cv-00855-JCM-VCF   Document 1   Filed 05/12/20   Page 25 of 29

# MAZZEO LAW, LLC
### INJURY TRIAL ATTORNEYS

PETER A. MAZZEO*
P: 702.382.3636
F: 702.382.5400
claims@mazzeolaw.com
* Licensed: NV & NY

March 10, 2020

Marissa Temple, Esq.
Rogers, Mastrangelo Cavalho & Mitchell
700 South 3rd Street
Las Vegas NV 89101
*Hand Delivered &*
*Via Facsimile: 702-384-1460*

Jeff Nimmo, Sr. Field Claims Rep
Acuity, A Mutual Insurance Company
PO Box 58
Sheboygan, WI 53082
*Via Facsimile: 920-208-7360*

      Re:     ***Time Sensitive UIM Demand to Settle***
            Our Client:   Carole Mendoza
            Date of Loss:  07/07/2018
            Your Insured:  Allstate Electric LLC/Carole Mendoza
            Claim No.:     PZ9780

Dear Ms. Temple:

We have reviewed your letter dated February 24, 2020 essentially denying any UIM benefits because Acuity believes that the third party bodily injury settlement of $50,000 was sufficient to pay her for her total harms and losses incurred in this accident notwithstanding the fact that her past medical specials alone totaled more than $116,000. Based on the totality of the evidence submitted in support of Carole's special and general damages sustained in this accident Acuity will be force litigation to address its complete failure to abide by its statutory duty to fairly and equitably settle this matter.

We believe that Acuity's position to deny any UIM benefits, rises to the level of Acuity failing in its duties, among other things, to fairly evaluate the claim and to effectuate a prompt fair and equitable settlement of the claim. In other words, this is nothing short of bad faith.

Before filing suit against Acuity for, among other things, breach of contract and for bad faith for failing to evaluate the claim fairly; for failing to attempt in good faith to effectuate a prompt fair and equitable settlement of the claim; failing to make any reasonable settlement offers to claim; and failing to accept reasonable and fair offers of settlement we will make one last attempt to try to resolve this amicably.

➢ Your assessment that $90,000 in medical bills were related to a preexisting condition in Ms. Mendoza's right shoulder is completely baseless and contrary to the medical evidence we submitted in support of her claim. This contention appears to be based on nothing more than Carole submitting to an MRI of the right shoulder in 2017. We had already provided you with the medical release authorization to obtain the 2017 MRI of the right shoulder taken at Advanced Open MRI of Tuscon. We have obtained the MRI film which we are providing to you on the enclosed disc.

➢ The numerous medical records we provided clearly establish a medical causation for

# MAZZEO LAW, LLC

### INJURY TRIAL ATTORNEYS

Page 2 of 4

March 10, 2020

Carole's right shoulder injuries to the subject accident. While Acuity might claim some apportionment for a preexisting condition, the before and after MRI studies and reports clearly reveal new and different injuries she sustained from the subject accident.

➢ Please see medical/causation letter attached from orthopedic surgeon Dr. Randall Yee. This report from a licensed medical doctor would certainly trump any lay opinions which either you or your client, Acuity, have regarding Carole's right shoulder's preexisting conditions versus new injuries post motor vehicle accident. Dr. Yee's identifies the acute onset of symptoms and distinguishes between the findings on the prior 2017 MRI from the 4/24/18 MRI.

➢ Regarding the prior shoulder complaints, based upon information and belief, Carole's right arm starting hurt in early 2017 which she believes was attributable to working out at the gym. Thereafter, she went to see her children and sister in Arizona in June 2017 complaining of her symptoms to her sister, Maria Mendoza-Cipollo, D.C., which prompted her chiropractor sister to order the MRI for the right shoulder. Carole did not seek formal medical treatment from her sister in Arizona however, her sister did give her several informal adjustments. As Carole was living in Las Vegas at the time she saw her sister in Arizona, she did not undergo formal treatment with her sister and nor did her sister/chiropractor feel there was a need to maintain any records for the few informal treatment sessions which Carole submitted to. The lack of records maintained for the couple of adjustments by her sister is irrelevant to the determination of accident related injuries where comparison of the two imaging studies, pre and post mva, clearly distinguish between a preexisting condition and the new injuries stemming from the subject accident.

➢ Regarding her loss wage claim, we had previously provided you her 2018 tax return as well as her pre-accident tax returns from 2016 and 2017 which shows and proves that Carole sustained lost wages in 2018 due to the injuries she sustained in this accident. She contends she was not able to manage the duties of her sales position and keep up with the TEAM. She had doctors and physical therapy appointments three/week for more than nine months after her resignation to help her back and legs. Accounts had already been moved to other reps who could manage them while she was on leave. Things were just getting worse and so it was better to resign then get fired.

➢ As previously represented, Carole reported an income of $71,088 on her 2017 and $79,863 on her 2016 income tax return. The disparity between these 2 returns is based on industry fluctuations in commissions earned. Conversely, her reported income on her 2018 income tax return was significantly diminished showing only $42,970. Consequently, we can approximate Carole's lost income based on the drastic changes in her wages from the 2016 and 2017 tax returns to the post-accident 2018 tax return. Averaging her pre-accident tax returns and subtracting the reduction in earned income in 2018, we can confidently conclude that she sustained wages losses approximating $32,505.50.

# MAZZEO LAW, LLC
INJURY TRIAL ATTORNEYS

> ➢ Your reference to the terms of Carole's departure from her prior employment appears to be a non-factor in the determination of her pre and post-accident earning ability. In any event, according to Carole, salespeople in the 'media business' are paid on 100% commission and by collections. Therefore, employees are paid until the day they resign. It is customary for a salesperson to be asked to leave the day they resign because the company does not want its employees taking customers or customer lists and ultimately competing with their company.

> ➢ Regarding the June 16, 2016 CT Scan of her neck, Carole was attending an event (June Fest) at Sunset Station Casino. She recalls it was a windy day in Las Vegas and she was standing near the Radio Station Tent when a gust of wind picked up a portion of the tent and the aluminum pole hit her in the face. She sustained a cut on her nose and went to the hospital to be examined and released. A CT Scan was taken since it was a work event which was registered on the workman compensation file. She did not otherwise receive any treatment or bill arising from the incident.

> ➢ Restating reference to pre and post-accident MRI's for right shoulder. Regarding the pre-accident 2017 MRI of the right shoulder, we have provided the radiologist's report from Advanced Open MRI of Tucson which helps clarify the distinction between the pre and post-accident shoulder condition and injury. In particular, the 2017 MRI of the right shoulder showed a) an increased thickness of the supraspinatus tendon and subscapularis tendon" which might be "compatible with a partial tear"; b) "No full-thickness tear is demonstrated"; and c) "no tear is outlined in the glenoid labrum."

>> • The radiologist, Dr. Zafar noted that the partial tear of the supraspinatus and subscapularis tendon needs to be correlated with a clinical examination. However, according to Carole, no medical provider ever provided any clinical confirmation for the alleged partial tear which was suspected from a reading of the 2017 MRI.

>> • The post-accident April 24, 2018 MRI of the right shoulder from SimonMed revealed significant changes from the 2017 MRI. Specifically, Dr. Snyder noted edema and a compression deformity in the anterior superior aspect of the shoulder measuring 10mm consistent with <u>fracture such as from small Hill-Sachs lesion or subcortical fracture.</u>

>> • The 2018 MRI also revealed a <u>definitive high-grade partial-thickness tear of the supra/tendon</u> which is consistent with the history of MVA.

>> • Additionally, the 2018 MRI shows a <u>SLAP type II tear involving the superior labrum</u> extending anterior to posterior with contrast imbibition, a <u>mild labral detachment</u> and an <u>increased signal involving intra-articular and extra-articular biceps junction consistent with strain or tendonosis, small split tear</u> is suggested on axial image 12.

Your position letter attempting to attribute all of Carole's post accident shoulder treatment

Case 2:20-cv-00855-JCM-VCF   Document 1   Filed 05/12/20   Page 28 of 29

# MAZZEO LAW, LLC
### INJURY TRIAL ATTORNEYS

Page 4 of 4

March 10, 2020

to alleged "injuries that appear to have pre-existed the this accident" is disingenuous since this conclusion is in no way supported by the totality of the medical records we have submitted to you. Conversely, it appears that the conclusion you arrived at in your letter is nothing more than your own personal opinion devoid of any consideration for the evaluation and findings made by actual medical doctors who treated Carole for her accident related injuries. In further support of the accident related medical treatment rendered to Ms. Mendoza, we have attached the causation letter from Dr. Randall Yee whose findings, opinions and conclusions are supported by evidence-based medicine.

I would ask that you and the UIM carrier make a sincere effort to resolve this claim in good faith because your 2/24/20 letter DENYING ANY UIM BENEFITS FOR THIS ACCIDENT IS SIMPLY BASELESS. If Acuity's position remains unchanged then we will file a lawsuit against Acuity for:

    a.  failing to conduct a prompt, reasonable and diligent investigation of the claims made against Acuity;

    b.  failing to evaluate the claim fairly;

    c.  failing to attempt in good faith to effectuate a prompt fair and equitable settlement of the claim;

    d.  failing to make any reasonable settlement offers to settle the claims;

    e.  failing to accept reasonable and fair offers of settlement;

    f.  putting its insured, Plaintiff herein, through unnecessary litigation; and

    g.  failing to pay any reasonable portion of the insurance coverage to Plaintiff.

Please accept this additional information to assist you in making a sincere and realistic evaluation of this claim. For the purposes of settlement, assuming arguendo that the subject accident might have caused some mild aggravation of a preexisting condition of the right shoulder, we are revising our prior demand and believe a fair and reasonable demand on the UIM policy is $300,000. This is our final attempt to settle prior to lawsuit and it is valid for 20 days and shall expire on March 30, 2020. Thank you.

Respectfully,

PETER MAZZEO
MAZZEO LAW, LLC

Encl. Dr. Yee Letter and disc of imaging study of 2017 MRI Right shoulder



X. Nick Liu, D.O.
*Board Certified Orthopedic Surgeon*
*Fellowship Trained Sports Medicine*
Timothy J. Trainor, M.D.
*Board Certified Orthopedic Surgeon*
*Board Certified Orthopedic*
*Sports Subspecialty Surgeon*
Randall E. Yee, D.O.
*Board Certified Orthopedic Surgeon*
*Fellowship Trained Sports Medicine*

Sep Bady, M.D.
*Board Certified Orthopedic Surgeon*
*Fellowship Trained Spine Surgeon*
Thornman Kuruvilla, D.P.M.
*Board Certified Podiatry*
*Certified in Wound Care & Hyperbaric Medicine*
Matthew H.C. Otten, D.O.
*Sports Medicine, Fellowship Trained*
Michael Trainor, D.O.
*Board Certified Orthopedic Surgeon*
*Fellowship Trained Spine Surgeon*

Sports Injuries • Fracture Care • Joint Replacement • Cartilage Replacement • Minimally Invasive Arthroscopic Surgery

# ADVANCED ORTHOPEDICS
# & SPORTS MEDICINE

Sports Injuries • Fracture Care • Joint Replacement • Cartilage Replacement • Minimally Invasive Arthroscopic Surgery

March 10, 2020

MAZZEO LAW GROUP

Dear Mr. Mazzeo,

I am responding to your request as it relates to Carole Mendoza. As you are aware, I have had the opportunity to evaluate and treat Ms. Mendoza as it relates to shoulder trauma. She originally presented to my clinic on 6/7/18 complaining of right shoulder pain which she attributed to a motor vehicle accident that occurred on 4/7/18. She had a relatively acute onset of symptoms for which she immediately sought treatment. Further assessment of her condition identified positive findings in the MRI of her right shoulder. Ms. Mendoza had a previous MRI of her right shoulder dated 6/16/17 which was compared to her post motor vehicle accident MRI dated 4/24/18. There were several differences in these two MRIs. Most significant was the subluxation versus dislocation that occurred in the accident. Additionally, there was a biceps tendon tear secondary to the trauma along with a SLAP tear on the post motor vehicle accident MRI which was not on the prior MRI. This tear was found to be traumatic in nature evident on the MRI as well as evident in my findings during surgery. I do believe with a reasonable degree of medical certainty that her injuries to her right shoulder are directly and casually related to her 4/7/18 motor vehicle accident. I believe all treatment was reasonable and necessary to aid Ms. Mendoza in healing from her accident. Please do not hesitate to contact me with questions.

Randall Yee, D.O.
RY/lp

Tel. (702) 740-5327 • Fax (702) 825-4915 • 7195 Advanced Way, Las Vegas, Nevada 89113

Electronically signed on 03/10/2020 by DR. YEE